No. 11-30276 & 12-30070

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT
UNITED STATES OF AMERICA,

Plaintiff/Appellant,

v.

SABIL MUMIN MUJAHID,

Defendant/Appellee.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA
THE HONORABLE H. RUSSEL HOLLAND

ANSWERING BRIEF FOR THE UNITED STATES

KAREN L. LOEFFLER
UNITED STATES ATTORNEY
DISTRICT OF ALASKA

Jo Ann Farrington
Assistant United States Attorney
Fed. Bldg. & U.S. Courthouse
222 West 7th Avenue #9, Room 253
Anchorage, AK 99513-7567
Telephone: (907) 271-5071
Fax: (907) 271-1500

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CA No. 11-30276 & 12-30070 |
| | ) | |
| Plaintiff/Appellee, | ) | DC No. 3:10-cr-00091-HRH |
| | ) | U.S. District Court for Alaska, |
| vs. | ) | Anchorage |
| | ) | |
| SABIL MUMIN MUJAHID, | ) | |
| | ) | |
| Defendant/Appellant. | ) | |

ON APPEAL FROM
THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA
HONORABLE H. RUSSEL HOLLAND

ANSWERING BRIEF FOR THE UNITED STATES

KAREN L. LOEFFLER
United States Attorney

JO ANN FARRINGTON
Assistant United States Attorney
Federal Building & United States Courthouse
222 West 7th Avenue #9, Room 253
Anchorage, AK 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-1500

Counsel for Plaintiff/Appellant

# TABLE OF CONTENTS

Page(s)

TABLE OF CONTENTS…………………………………………………….i

TABLE OF ABBREVIATIONS………………………………………….iv

TABLE OF AUTHORITIES…………………………………………...v

STATEMENT OF ISSUES PRESENTED .................................. 1

STATEMENT OF JURISDICTION & BAIL STATUS ........................... 2

STATEMENT OF THE CASE .................................................. 4

    I.     INTRODUCTION.................................................... 4

    II.    FACTS OF THE CASE ......................................... 5

    III.   PROCEDURAL HISTORY OF THE CASE ........................... 6

SUMMARY OF ARGUMENT ................................................. 12

ARGUMENT ........................................................................ 15

    I.     Congress Had the Authority to Criminalize Sexual Assaults in Prisons Holding Federal Prisoners Under Contract with the Federal Government. ................................................... 15

         A.       Standard of Review............................................. 15

         B.       Discussion ......................................................... 15

1. Mujahid has not demonstrated that the sexual assault statutes are unconstitutional on their face....15

    a. The sexual assault legislation is a proper exercise of Congress' authority to pass necessary and proper measures concerning federal prisoners…………………………………....18

        1. The Statutory Background……………...18

        2. The *Comstock* Analysis…………………20

        3. The Spending Power Analysis…………25

II.   The Sexual Assault Statutes are Not Unconstitutional as Applied to Mujahid.........................................................................31

    A.        Standard of Review.............................................31

    B.        Discussion ...........................................................31

    1. The argument that the sexual assault statutes are unconstitutional as applied to Mujahid because he was not a federal prisoner was forfeited and should not be considered by this court…....……………………….31

    2. Assuming Mujahid was not a federal prisoner at the time of sexual assaults, the sexual assaults statutes nonetheless are constitutional as applied.....34

III.   The District Court Properly Concluded that the Jurisdictional Predicate in this Case was an Issue of Law that Should be Decided by the Court. ....................................................38

    A.        Standard of Review.............................................38

    B.        Discussion ...........................................................38

1. Background………………………………………………….38

2. The Law…………………………………………...…........41

3. Harmless Error……………………………………………50

CONCLUSION ...............................................................................55

STATEMENT OF RELATED CASES………………………………………57

BRIEF FORMAT CERTIFICATE.............................................................58

CERTIFICATE OF COMPLIANCE ...................................................599

CERTIFICATE OF SERVICE..............................................................60

# TABLE OF ABBREVIATIONS

ER ........................................................................... Excerpt of Record

PSR ..................................................................Pre-Sentence Report

# TABLE OF AUTHORITIES

## CASES

*Farmer v. Brennan,* 511 U.S. 825 (1994) .................................................. 18

*Fischer v. United States*, 529 U.S. 667, 668 (2000) ................................ 37

*Heller v. Doe*, 509 U.S. 312, 320-321 (1993) ........................................... 27

*Nat'l Fed. Of Independent Business v. Sebelius*, ___ U.S. ___,
    132 S. Ct. 2566 (2012) ...................................................................... 30

*Neder v. United States*, 527 U.S. 1, 18 (1999) ........................................ 51

*Oklahoma v. U.S. Civil Service Comm'n,*
    330 U.S. 127, 143 (1947) .............................................................. 27-28

*Sabri v. United States*, 541 U.S. 600 (2004) ........................................... 36

*Salinas v. United States*, 522 U.S. 52 (1997) ......................................... 29

*Seaton v. Mayberg*, 610 F.3d 530 (9th Cir. 2010) ................................... 18

*Taylor v. Bauknecht*, 2007 WL 2021880 at *1 (D.S.C. 2007) ................ 16

*United States v. Blake*, 2008 WL 3286725 (3rd Cir, Aug.11, 2009) ....... 17

*United States v. Bohn*, 622 F.3d 1129 (9th Cir. 2010) ............................ 15

*United States v. Bynum*, 327 F.3d 986 (9th Cir. 2003) ........................... 30

*United States v. Cherer*, 513 F.3d 1150, 1154 (9th Cir. 2008) ............... 38

*United States v. Comstock,* 130 S. Ct. 1949 (2010) ................20-24, 30-36

*United States v. Comstock*, ___ U.S. ___, 130 S. Ct. 1949 (2010) ....... 8, 12

v

*United States v. DiCristina*, 726 F.3d 92 (2d Cir. 2013) ......................... 49

*United States v. Gaudin*, 515 U.S. 506, 510 (1995) ............... 41-43, 45, 50

*United States v. Gipe*, 672 F.2d 777, 779 (9th Cir. 1982) .......... 40, 45, 49

*United States v. Hernandez-Fundora*, 58 F.3d 802 (2d Cir. 1995) .... 47-48

*United States v. James,* 987 F.2d 648, 650(9th Cir. 1993) ..................... 49

*United States v. Jinian*, 725 F.3d 954 (9th Cir. 2013) ............................ 31

*United States v. Kranovich*, 401 F.3d 1107 (9th Cir. 2005) .................... 37

*United States v. McKye*, ___ F.3d ___ 2013 WL 4419330 (10th Cir. Aug. 20, 2013) ................................................................................... 49

*United States v. Mirikitani*, 380 F.3d 1223 (9th Cir. 2004) ................... 37

*United States v. Moreno-Morillo*, 334 F.3d 819(9th Cir. 2003) ............. 50

*United States v. Mujahid*, 433 Fed.Appx. 559 (9th Cir. 2011) ............. 5, 7

*United States v. Mujahid*, DC No. 3:09-cr-00034-TMB ........................... 7

*United States v. Mujahid*, DC No. 3:09-cr-00053-TMB ........................... 7

*United States v. Roberts*, 185 F.3d 1125, 1139 (10th Cir. 1999) ............ 44

*United States v. Peeples*, 630 F.3d 1136 (9th Cir. 2010) ................... 15-16

*United States v. Perlaza*, 439 F.3d 1149 (9th Cir. 2006) ........................ 51

*United States v. Prentiss*, 206 F.3d 960, 967 (10th Cir. 2000) ............... 47

*United States v. Reyes-Bonilla*, 671 F.3d 1036 (9th Cir. 2012) ............. 26

*United States v. Roy*, 408 F.3d 484 (8th Cir. 2005) ................................. 44

*United States v. Ruiz*, 428 F.3d 877 (9th Cir. 2005) ............................... 26

*United States v. Salerno*, 481 U.S. 739, 745 (1987) ................................ 16

*United States v. Smith*, 282 F.3d 758 (9th Cir. 2002) ................. 42-43, 50

*United States v. Sohappy*, 770 F.2d 816, 822 n.6 (9th Cir. 1985) .......... 44

*United States v. Soto*, 539 F.3d 191 (3d Cir. 2008) ................................ 45

*United States v. Stevens*, 559 U.S. 460 (2010) ........................................ 16

*United States v. Summers*, 268 F.3d 683 (9th Cir. 2001) ....................... 31

*United States v. Thongsy*, 577 F.3d 1036, 1043 (9th Cir. 2009) ....... 51, 54

*United States v. Warren*, 984 F.2d 325 (9th Cir. 1993) .................... 43, 49

*United States v. Zepeda*, 705 F.3d 1052, 1061-62, withdrawn and
    superseded by *United States v. Zepeda*, ___ F.3d ___, 2013 WL
    5273093 (9th Cir, Sept. 19, 2013) ................................................ 44

**STATUTES**

5 U.S.C. §§ 7321-7226 (Hatch Act) ........................................................ 27

18 U.S.C. § 1791 ............................................................. 19, 22, 25

18 U.S.C. § 2241 ......................................... 9, 18, 25, 40, 46, 47

18 U.S.C. § 2242 ..................................................... 9, 18, 25, 40

18 U.S.C. § 2244 ..................................................... 9, 18. 25, 40

18 U.S.C. § 3231 ..................................................................... 2

46 U.S.C. § 70502 .................................................................. 42

**RULES**

Fed. R. Crim. P. 52(b) ................................................................. 31

**OTHER**

U.S. Const., Art. I, § 8, cl. 18 ..................................................... 12

Public Law 99-654, § 2, Nov. 14, 1986, 100 Stat. 3660. ......................... 18

H.R. Rep. 109-233, at 97 ............................................................ 25

## STATEMENT OF ISSUES PRESENTED

I.    Did Congress's action in criminalizing sexual assaults in facilities housing federal prisoners under contract with the federal government exceed its constitutional powers?

II.   Even if the sexual assault statutes are overbroad, are their application to Mujahid, who was a federal prisoner at the time he assaulted other inmates, constitutional as applied?

III.  Did the district court err when it decided the jurisdictional component of the statutes of conviction – that the Anchorage Correctional Complex is a facility that houses federal prisoners pursuant to a contract with the federal government – as a matter of law, rather than instructing the jury on that element?

IV.   If so, was that error harmless?

## STATEMENT OF JURISDICTION & BAIL STATUS

This is an appeal of the conviction of defendant Sabil Mujahid, who was found guilty of sexual assault in violation of 18 U.S.C. §§ 2241(a), 2244(a)(1) and 2244(a)(2) as a result of his repeated rapes of fellow prisoners in the Anchorage Correctional Complex, where he was being held awaiting his trial on other federal charges. Mujahid does not dispute his conduct; instead, he raises a constitutional challenge to the statutes of conviction, and argues that the district court erred when it failed to submit to the jury the jurisdictional issue of whether the ACC is a facility housing prisoners pursuant to a contract with the federal government.

Because Mujahid was charged in an indictment with a violation of federal criminal law, the district court had subject matter jurisdiction pursuant to 18 U.S.C. § 3231. Indictment, ER 33. Judgment was entered on Mujahid's conviction on September 21, 2011. ER 98. Mujahid's timely notice of appeal from that order was filed September 29, 2011. ER 104. On January 12, 2012, Mujahid filed a pro se motion for a new trial, arguing that the prosecution had improperly withheld evidence that he was in the custody of the State of Alaska for alleged

drug violations at the time of the alleged assaults, and that he therefore should be granted a new trial. ER105-117. The district court denied this motion on February 10, 2012, concluding that it lacked jurisdiction over the motion because Mujahid had already filed a notice of appeal from the underlying conviction, ER 31, and on February 22, 2012, Mujahid filed a second timely notice of appeal from that order. ER 118. On April 19, 2012, this Court sua sponte consolidated the two appeals.

Mujahid is serving his sentence, and his estimated release date is September 2052.

## STATEMENT OF THE CASE

### I.     INTRODUCTION

Mujahid was convicted of sexual assaults on fellow prisoners at the Anchorage Correctional Complex, where he was being held while awaiting trial on other federal charges.  The ACC provides housing for federal prisoners in Alaska pursuant to a contract with the Department of Justice.  Mujahid argues on appeal that Congress exceeded its authority under the Necessary and Proper Clause of the Constitution when it extended coverage of the federal sexual assault statute to criminalize assaults in such facilities, and that the sexual assault statutes are unconstitutional as applied to him.  He also argues that the district court erred when it decided that the question of whether the ACC was a facility covered by the statute was a question of law to be determined by the court rather than the jury.

## II.    FACTS OF THE CASE

### A.    Background.

In March 2009, Mujahid was under investigation for sex trafficking of minor girls in Anchorage, Alaska.[1]  While preparing to execute a search warrant for his home and automobile, the FBI had placed Mujahid's apartment under surveillance, and he was observed putting a loaded Smith & Wesson .44 magnum revolver in the trunk of his car.  *See United States v. Mujahid*, 433 Fed.Appx. 559 (9th Cir. 2011).  Because Mujahid was a thrice-convicted felon, with previous convictions for attempted murder, drug offenses and being a felon in possession of a firearm, he was arrested for and charged with possession of the handgun and ammunitions.  PSR ¶ 13.  He was incarcerated at the ACC beginning on March 5, 2009, until June 28, 2010, when he was transferred to a federal Bureau of Prisons facility. *Id.*

---

[1] These allegations became the basis of charges against Mujahid in District of Alaska Case No. 3:09-cr-000530TMB.

5

## B. The Offense Conduct.

During the 15 months that Mujahid was detained at the ACC,[2] he sexually assaulted several of his fellow inmates.  He targeted young, slightly-built Alaska Native inmates, and intimidated them with his size and weight into performing sexual acts.  PSR ¶ 14.  For example, Victim 2 was forced to commit fellatio on Mujahid with a pen held to his throat.  PSR ¶15.  Victim 6 was anally raped and left bleeding after Mujahid threatened to beat him if he did not cooperate.  PSR ¶ 16.  Victim 3 was forcibly assaulted, stripped of his pants and anally raped.  PSR ¶17.

## III.  PROCEDURAL HISTORY OF THE CASE

During the relevant period of time underlying this prosecution, Mujahid was charged in separate indictments with a number of different crimes.  He was initially arrested and charged with being a

---

[2] Mujahid was tried and convicted of the felon-in-possession charges in June 2009, and he was indicted on the sex trafficking of minors charges in July 2009.  After Mujahid's conviction and sentence in the sexual assault case that led to this appeal, the sex trafficking charges were dismissed by the government, in light of the substantial sentence Mujahid received for the charges on which he had already been convicted, and the anticipated trauma of the courtroom experience for his young victims should his sex trafficking case go to trial.

felon in possession of a firearm and ammunition in March 2009.

*United States v. Mujahid*, DC No. 3:09-cr-00034-TMB.  He was held at the ACC on those charges pretrial.  In May 2009, he was tried and convicted of the firearms charges, and remained in custody at the ACC while investigation continued of the child sex-trafficking charges.[3]  PSR ¶13.  In July 2009, he was indicted on charges of conspiracy, sex trafficking of children, promoting prostitution, sex trafficking by force, production of child pornography and identity theft.  *United States v. Mujahid*, DC No. 3:09-cr-00053-TMB.

On September 23, 2010, Mujahid was charged in the instant case with multiple counts of sexual assault and sexual abuse.  CR 1, ER 127. The initial indictment alleged that between May 2009 and May 2010, while incarcerated at the ACC, Mujahid had sexually assaulted a number of fellow prisoners at the institution.  On March 17, 2011, a superseding indictment was filed, somewhat expanding the charges

---

[3] This Court affirmed Mujahid's conviction and sentence on the felon-in-possession charges in *United States v. Mujahid*, 433 Fed.Appx. 559 (9th Cir. 2011).

outlined in the initial indictment, CR 175, and on April 19, 2011, a second superseding 18-count indictment was filed.  ER 33-42.

Before trial, Mujahid moved to dismiss the indictment, arguing, as he does in this appeal, that the sexual assault statutes exceeded Congress's authority under Article I, insofar as they regulated conduct in facilities other than federal prisons.  Prosecuting such cases, he argued, is a police power that is reserved to the States under the Tenth Amendment.  CR 24 & 25.

A magistrate judge recommended that the motion be denied, relying primarily on the analysis in *United States v. Comstock,* ___ U.S. ___,130 S. Ct. 1949 (2010) (holding that Congress had authority under the Necessary and Proper Clause to pass legislation authorizing the civil commitment, beyond the date the prisoner would otherwise be released, of a sexually dangerous federal prisoner).  ER 1-18.  The district court agreed and denied Mujahid's motion on January 28, 2011.  ER 19.  In his motion, Mujahid also argued that the statutes were unconstitutional as applied to him, but the district court concluded that he had failed to offer any facts that would make the application of the

8

laws as applied to him unconstitutional if they were constitutional on their face.  ER 21.

Mujahid's trial on these charges began on June 21, 2011, and the government introduced evidence concerning the ACC and the contract pursuant to which Mujahid was housed there.  ER 44-54, ER 57-84. Insofar as is relevant here, the jurisdictional predicate for each of the offenses charged was that the assault must have occurred in a "facility in which persons are held in custody . . . pursuant to a contract or agreement with the head of any Federal department or agency." 18 U.S.C. §§ 2241, 2242, & 2244.  In considering the appropriate jury instructions with respect to the jurisdictional predicate of the statutes, the district court concluded that "the existence of the contract is a legal question for the Court to decide and the fact question that's for the jury to decide is simply was the victim housed in, you know, the institution . . . ."  ER 28.  As a result, the jury was asked only to decide whether the assaults occurred at the ACC.

The jury found Mujahid guilty on 12 counts, not guilty on three counts, and did not reach a verdict on four counts.  He was convicted of four counts of aggravated sexual abuse in violation of 18 U.S.C.

9

§ 2241(a)(1), three counts of sexual abuse in violation of 18 U.S.C.

§ 2242(a), two counts of abusive sexual contact in violation of 18 U.S.C.

§ 2244(a)(2), and one count of abusive sexual contact in violation of

18 U.S.C. § 2244(a)(1).  ER 98-103.

After trial, on the government's motion, two counts of conviction

were dismissed because of an error in the jury verdict forms.  The four

counts on which the jury hung also were dismissed.  Also after trial, the

district court entered an order memorializing for the record its

determination that, as a matter of law, "the Anchorage Correctional

Complex is a facility in which persons are held in custody pursuant to

an agreement with the United States Marshals Service, a federal

agency."  ER 30.

Mujahid was sentenced to 480 months' imprisonment on his

conviction, CR 345, and he filed a timely notice of appeal on October 6,

2011.  ER 104.  More than three months later, Mujahid filed a pro se

Motion for a New Trial, arguing that the government had withheld

evidence that "comity was with the State" at the time of the alleged

assaults on Victims 3 and 6.  ER 105-113.  He argued that during the

time after his conviction on the federal firearms charges, he was

10

actually in State custody awaiting trial on narcotics violations, rather than being held as a federal prisoner.  He contended that this was exculpatory evidence that should have been disclosed by the government.  *Id.*  The district court denied this motion, concluding that it lacked jurisdiction to consider the claim because Mujahid had already filed a notice of appeal from the underlying conviction, and pointing out that Mujahid had counsel who could and should handle any appropriate motions on Mujahid's behalf.  The court also declined to seek a remand from this Court to address Mujahid's claims.  ER 31-32.  Mujahid filed a second timely notice of appeal from the denial of this motion, ER 118, and this Court has consolidated the two appeals.

## SUMMARY OF ARGUMENT

Congress was well within its powers pursuant to the Necessary and Proper Clause, U.S. Const. art. I, § 8, cl.18, when it passed statutes governing the conduct of individuals in facilities with which the federal government has entered into a contract for the housing of federal prisoners. As the Supreme Court has explained, because the passage of criminal statutes in furtherance of its enumerated powers is within the scope of the Necessary and Proper Clause, Congress in turn also has ample authority under the Necessary and Proper Clause to "enact laws governing prisons and prisoners" detained as a result of their violation of the laws of the United States. *United States v. Comstock*, ___ U.S. ___, 130 S. Ct. 1949 (2010). Furthermore, the criminal statutes involved here were supported by sound reasons affecting a substantial federal interest, do not unduly invade State sovereignty, and are narrow in scope, each of which is an additional factor weighed by the *Comstock* Court.

In addition to the source of authority arising from the Necessary and Proper Clause, Congress also derived the authority to enact these statutes from its Spending Power. U.S. Const. art. I, § 8, cl. 1. Because

12

the United States is authorized to expend funds to enter into contracts with the States and other authorities to house federal prisoners, it also has the authority under the Spending Power to attach conditions to those expenditures, including passing regulatory and criminal statutes.

Mujahid's contention that he was not in fact a federal prisoner at the time of his offenses, and therefore that the sexual assault statutes are unconstitutional as applied to him, was not properly raised in district court and should not be considered by this Court.  There have been no factual findings that would support such a claim, and there was no plain error.  In any event, neither the sexual assault statutes nor the Constitution require that the defendant be a federal prisoner at the time of the offense.

The district court did not err in deciding not to submit to the jury the preliminary jurisdictional question of whether the ACC is a facility housing federal prisoners under contract with the Department of Justice.  The question of whether a given location is within the jurisdiction of the United States is a legal issue properly determined by the court, and the district court correctly submitted the factual component of the jurisdictional issue – whether the assault occurred at

13

the ACC – to the jury.  In any event, even if the court's decision not to submit the issue to the jury was error, any error was harmless because overwhelming, unchallenged and uncontradicted evidence in the record establishes that the ACC was in fact such a facility, and Mujahid offers no facts that would suggest otherwise.

# ARGUMENT

### I.    Congress Had the Authority to Criminalize Sexual Assaults in Prisons Holding Federal Prisoners Under Contract with the Federal Government

#### A.    Standard of Review

Challenges to the constitutionality of criminal statutes based on an argument that the statutes exceed congressional authority are subject to de novo review. *United States v. Bohn*, 622 F.3d 1129 (9th Cir. 2010).

#### B.    Discussion

##### 1.    Mujahid has not demonstrated that the sexual assault statutes are unconstitutional on their face.

Mujahid's initial argument is that the sexual assault statutes pursuant to which he was convicted are unconstitutional on their face, because they impermissibly tread on police powers preserved to the State under the Tenth Amendment.[4]  As this Court has observed, "[a] defendant raising a facial challenge to legislation must sustain a heavy burden to have legislation declared unconstitutional." *United States v.*

---

[4] "The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people."  U. S. Const. amend. X.

*Peeples*, 630 F.3d 1136 (9th Cir. 2010) (rejecting a facial challenge to mandatory release provision of the Walsh Act).  To succeed in such a quest, Mujahid "would have to establish that no set of circumstances exists under which [the statute] would be valid or that the statute lacks any plainly legitimate sweep."  *United States v. Stevens*, 559 U.S. 460 (2010) (internal quotations and citations omitted).  A facial challenge to a legislative act is "the most difficult challenge to mount successfully, since the challenger must establish that *no set of circumstances exists* under which the Act would be valid."  *United States v. Salerno*, 481 U.S. 739, 745 (1987) (emphasis added).[5]

Muhahid has made no effort to make this showing, and it is not difficult to imagine a number of scenarios encompassed by the statute to which Mujahid's Tenth Amendment argument would have no application.  For example, the United States may well decide to contract with a private prison facility to house federal prisoners.  *See, e.g., Taylor v. Bauknecht*, 2007 WL 2021880 at *1 (D.S.C. 2007) (observing

---

[5] There is a somewhat more flexible standard applicable to certain facial challenges based on the First Amendment, but that approach is not applicable to Mujahid's Tenth Amendment challenge.

that McRae Correctional Institute, in McRae, Georgia, is a private correctional facility operated by Corrections Corporation of America under federal contract to house federal offenders).  Or, as in *United States v. Blake*, 2008 WL 3286725 (3rd Cir, Aug.11, 2009) (Virgin Islands prison), federal prisoners may be housed in a facility belonging to the District of Columbia or one of the Territories of the United States.  Mujahid does not suggest, and surely any such argument would not prevail, that the Congress is powerless to pass legislation that would criminalize an assault by a federal prisoner, or upon a federal prisoner, in such a facility.

Thus, Mujahid has not established that these statutes are unconstitutional on their face, because there are a number of plausible scenarios in which their application is plainly constitutional.  In any event, his argument fails, because, as explained below, Congress was well within its powers to pass legislation governing the conduct of individuals within prisons housing federal prisoners.

17

### a) The sexual assault legislation is a proper exercise of Congress's authority to pass necessary and proper measures concerning federal prisoners

### 1) The Statutory Background

The serious national problem of sexual abuse in prisons, both between prisoners and between prisoners and corrections personnel, has been an increasing focus of concern in this country for some time. It is, of course, the obligation of any sovereign to ensure minimum standards of health, safety and welfare for those being held pursuant to its authority – indeed, the Eighth Amendment guarantees it. *Farmer v. Brennan,* 511 U.S. 825 (1994) (prison officials have duty to protect prisoners from violence, including rape, at hands of other prisoners); *Seaton v. Mayberg*, 610 F.3d 530 (9th Cir. 2010) (prison may owe a constitutional duty to protect prisoner from a sexually violent predatory roommate whose proclivity to rape his roommate is known to the prison).

In 1986, Congress passed the predecessor statutes to the current 18 U.S.C. §§ 2241, 2242 and 2244, criminalizing sexual assaults in the special maritime and territorial jurisdiction of the United States and in federal prisons. Public Law 99-654, § 2, Nov. 14, 1986, 100 Stat. 3660.

18

The problem of prison violence continued to attract congressional attention, and in 2003, Congress passed the Prison Rape Reduction Act of 2003, Public Law 108-79, requiring the adoption of programs to prevent and address the issue of sexual assault in prisons by any prison facility receiving federal funds, and providing for the ongoing monitoring of the issue by the Department of Justice.

Three years later, and twenty years after the federal sexual assault statutes were first adopted, perhaps recognizing that federal prisoners were often held, at least temporarily, in facilities other than federal prisons,[6] Congress expanded the jurisdictional basis for the criminal sexual assault provisions, to cover sexual assaults occurring in any facility in which federal prisoners are held pursuant to contract.[7]

---

[6] The legislative history does not explain the reasoning behind the decision to expand jurisdiction. As Mujahid explains in his opening brief, federal prisoners are often held temporarily in State and local facilities under contract with the Department of Justice, while awaiting trial and during court proceedings, before being transferred to federal prisons to serve their terms. In addition, some federal prisoners are housed in private contract prisons, and in prisons operated by the District of Columbia and the Territories.

[7] In the same legislation, Congress also expanded the jurisdictional basis for 18 U.S.C. § 1791, which prohibits the possession of contraband

19

These changes were adopted as part of the Violence Against Women and Department of Justice Reauthorization Act of 2005. According to the Committee Report, "the Committee finds the authority for this legislation in article I, section 8 of the Constitution." H.R. Rep. 109-233, at 97.

### 2) The *Comstock* Analysis

The government argued below, and the district court agreed, that the challenged legislation was within Congress's power to pass "necessary and proper" legislation to discharge its responsibility for federal prisoners, which in turn flows from its authority to pass criminal legislation concerning its enumerated powers. For example, Congress may pass criminal statutes relying on its authority over interstate commerce, and may then in turn pass "necessary and proper" legislation setting up and regulating a prison system to punish violators of those criminal statutes. This was the conclusion reached by the Supreme Court in *Comstock*, 130 S. Ct. 1949, in the course of upholding a federal statute allowing a federal district court to order the civil

---

in prisons, in the same terms as the expansion of the sexual assault statutes.

commitment, beyond the date the prisoner would otherwise be released, of a sexually dangerous federal prisoner.

The *Comstock* Court began by recognizing the broad authority granted by the Necessary and Proper Clause to Congress to enact any laws that are "convenient, or useful" or "conducive" to the "beneficial exercise" of one of the enumerated powers. *Id.* at 1956-57:

> [I]n determining whether the Necessary and Proper Clause grants Congress the legislative authority to enact a particular federal statute, we look to see whether the statute constitutes a means that is rationally related to the implementation of a constitutionally enumerated power.

*Id.* at 1956. According to the Supreme Court, the "choice of means" is left primarily to the judgment of Congress, leaving to it a "large discretion." *Id.* at 1957.

The Court then went on to observe that while the enactment of criminal laws is not itself one of the enumerated powers of Congress, it is well-established that Congress may create crimes in furtherance of its enumerated powers. And in order to ensure the enforcement of such federal criminal laws, Congress in turn has authority to establish the means by which convicted prisoners may be punished. Furthermore:

> Congress . . . can also ensure the safety of the prisoners, prison workers and visitors, and those in surrounding communities by, for example, creating further criminal laws governing entry, exit, and smuggling[.]

*Id.* at 1958. It is worthy of note that in this list of crimes that the Supreme Court states Congress is free to enact, the Court expressly approves 18 U.S.C. § 1791, which prohibits the smuggling of contraband, and which has precisely the same jurisdictional scope as do the sexual assault statutes challenged here by Mujahid. That statute, like the sexual assault statutes, applies to any inmate of a "facility in which persons are held in custody . . . pursuant to a contract or agreement with the Attorney General." 18 U.S.C. § 1791(d)(4).

Finally, in approving the civil commitment statute at issue in *Comstock*, the Supreme Court observed that the legislation was a relatively "modest addition" to the federal government's long-term involvement in addressing the mental health of its prisoners, *Comstock*, 130 S. Ct. at 1958, that it was "reasonably adapted" to Congress's power to act as a responsible federal custodian*, id*. at 1961, and that it accommodated State interests in an area of shared State responsibility. *Id.* at 1962.

Applying the *Comstock* analysis to this case, it is apparent that the extension of the federal sexual assault statutes to assaults occurring in facilities holding federal prisoners under contract with the federal government is constitutional. First of all, the provisions plainly are "rationally related" to Congress's power to "ensure the safety of the [federal] prisoners, prison workers and visitors, and those in surrounding communities." *Comstock*, at 1958. The legislation, which expanded coverage of the long-standing federal law criminalizing sexual assault in federal prisons to other facilities holding federal prisoners, was a relatively "modest addition" to the previous regulation of such conduct, ensuring that federal prisoners are both subject to and protected by the criminalization of sexual assaults during the entirety of their federal detention, not just that period spent in a federal prison. The legislation was also a modest addition to the long-standing broad panoply of laws and regulations governing the federal detention of prisoners. In light of the guarantees of the Eighth Amendment and the regulatory scheme established in the Prison Rape Reduction Act, it is also a relatively modest expansion of the federal attention already

brought to bear on the ways State and local jurisdictions choose to run their prisons.

Finally, the statutes accommodate State interests in maintaining control of and jurisdiction over the behavior of prisoners and prison staff in their own institutions. The statutes do not supplant State legislation addressing the same topic; rather, like many federal criminal statutes, they create concurrent and complementary jurisdiction, enabling the States and federal government to work together to address this intractable problem. In any event, if any State should conclude that accepting federal jurisdiction over sexual assaults occurring in prison facilities holding federal prisoners is an unacceptable incursion on its own sovereignty, it may forestall the issue altogether by not entering into such contracts.

Thus, based on the *Comstock* analysis, the expansion of federal jurisdiction over sexual assaults in federal prisons to include assaults in facilities holding federal prisoners pursuant to contract with the federal government is plainly constitutional, with Congress's power flowing from the Necessary and Proper Clause. It is rationally related to Congress's power to establish and manage systems to administer

24

punishment to federal prisoners, it is a relatively modest addition to the substantial panoply of statutes and regulations governing those systems, and it accommodates State sovereignty.

### 3) The Spending Power Analysis

The expansion of jurisdiction in 18 U.S.C. §§ 2241, 2242 and 2244 (the sexual assault statutes), as well as the expansion of jurisdiction in 18 U.S.C. § 1791 (contraband in prisons), adopted at the same time, is also within congressional authority based on the Spending Power.[8] Each of these statutes requires that, at the time of the alleged offense, the facility in question be under contract with the federal government to house federal prisoners.  Because Congress has the power under the Spending Clause to attach conditions to its expenditures, the sexual

---

[8] When Congress passed the amendments to the sexual assault statutes, it cited its authority as arising from Article I, section 8, of the Constitution.  H.R. Rep. 109-233, at 97.  That section includes a number of different enumerated powers, including the Spending Power in clause 1, which appears to be the specific enumerated power on which Congress was relying.  It provides:  "The Congress shall have the Power To lay and collect Taxes, Duties, Impost and Excises, to pay the Debts and provide for the common Defence and general Welfare of the United States; but all Duties Imposts and Excises shall be uniform throughout the United States."

25

assault statutes, to the extent that jurisdiction is based on a federal contract, are constitutional.

Before turning to the substance of this argument, however, it must be acknowledged that this basis for congressional action was not argued before the district court, and was not relied upon by the district court in finding the statutes constitutional. That does not, however, limit this Court's power to consider the argument on appeal. It is well-established that the Court may affirm a lower court's ruling on any ground supported by the record, whether or not the particular argument was raised in district court, so long as the issue is briefed in the appellate court and there is sufficient basis in the record for the appellate court to address it. *See, e.g., United States v. Reyes-Bonilla*, 671 F.3d 1036 (9th Cir. 2012) (denial of a motion to dismiss an indictment may be affirmed on any basis supported by the record); *United States v. Ruiz*, 428 F.3d 877 (9th Cir. 2005).

This principle is particularly important when an appellate court is being asked to declare a statute unconstitutional. "A statute is presumed constitutional . . . and 'the burden is on the one attacking the legislative arrangement to negative every conceivable basis which

26

might support it.'" *Heller v. Doe*, 509 U.S. 312, 320-321 (1993). The respect due a coordinate branch counsels against invalidating an Act of Congress as in excess of its Article I authority without considering all available grounds for upholding the law. For these reasons, this Court can and should consider the Spending Power as an additional source of authority for Congress's passage of these statutes.

The jurisdictional basis supporting these statues – that the assault occurred in a facility housing federal prisoners under contract with the federal government – is strikingly similar to other federal statutes regulating conduct in areas of traditional State responsibility based on a link to federal expenditures, and the Supreme Court has repeatedly held that such statutes are constitutional. For example, the Hatch Act, 5 U.S.C. §§ 7321-7226, in addition to its limitations on the partisan political activity of federal employees, also forbade State and local civil service employees who work in connection with programs that receive federal funds from actively participating in partisan political activities. In 1947, the State of Oklahoma challenged the authority of Congress to so restrict the conduct of the State's own employees, arguing, as does Mujahid here, that such regulation invaded the

27

sovereignty of the State in violation of the Tenth Amendment. The

Supreme Court rejected the argument:

> [T]he Tenth Amendment has been consistently construed as
> "not depriving the national government of authority to resort
> to all means for the exercise of a granted power which are
> appropriate and plainly adapted to the permitted end." The
> end sought by Congress through the Hatch Act is better
> public service by requiring those who administer funds for
> national needs to abstain from active political partisanship.
> So even though the action taken by Congress does have
> effect upon certain activities within the state, it has never
> been thought that such effect made the federal act invalid.

*Oklahoma v. U.S. Civil Service Comm'n*, 330 U.S. 127, 143 (1947). The

Court went on, "The offer of benefits to a state by the United States

dependent upon cooperation by the state with federal plans, assumedly

for the general welfare, is not unusual." *Id.* at 144.

Another statutory scheme that parallels the criminal statutes

Mujahid attacks here is 18 U.S.C. § 666, which in pertinent part

criminalizes theft, fraud and bribery by State and local employees so

long as the State or local government entity receives at least $10,000 in

federal grants, contracts, loans, or other forms of government

assistance. Although § 666 arguably entrenches far more closely than

do the sexual assault statutes on traditional State interests, in that it

potentially brings the prosecutorial powers of the federal government to

28

bear on almost all State and local employees for a variety of misdeeds in their employment, the Supreme Court had no difficulty upholding the constitutionality of the statute, in a case with striking similarities to Mujahid's. *Salinas v. United States*, 522 U.S. 52 (1997).

*Salinas* arose from a bribery scheme operated by a sheriff and deputy in Hidalgo County, Texas. Like the contractual arrangement here, in *Salinas* the federal government entered into contracts with Hidalgo County pursuant to which federal prisoners would be housed in the local jail. A federal prisoner held temporarily at the jail paid the sheriff and his deputy a series of bribes in exchange for contact visits with his wife and his girlfriend. In response to the defendant's challenge to the constitutionality of the statute, the Supreme Court summarily rejected the argument, concluding:

> Furthermore, there is no serious doubt about the constitutionality of § 666(a)(1)(B) as applied to the facts of this case. Beltran was without question a prisoner held in a jail managed pursuant to a series of agreements with the Federal Government. The preferential treatment accorded to him was a threat to the integrity and proper operation of the federal program. Whatever might be said about § 666(a)(1)(B)'s application in other cases, the application of § 666(a)(1)(B) to Salinas did not extend federal power beyond its proper bounds.

29

*Id.* at 60-61. *See also*, *United States v. Bynum*, 327 F.3d 986 (9th Cir. 2003) (rejecting a broad facial challenge to § 666 based on the Tenth Amendment). Similarly, Mujahid was a "prisoner held in a jail managed pursuant to a series of agreements with the Federal Government." His violent rapes of other prisoners "was a threat to the integrity and proper operation" of the federal program to house its prisoners. Therefore, in the words of the Supreme Court, there can be "no serious doubt" about the constitutionality of the sexual assault statutes in this context.[9]

---

[9] The Supreme Court recently discussed the limits of the Spending Power when it comes into tension with the Tenth Amendment interests of the State. For the first time, the Court held that Congress had exceeded the limits of the Spending Power, finding that the financial consequences of a State choosing to decline federal funding for State Medicaid programs would be so drastic that Congress's effort to use the Spending Power to induce expansion of State Medicaid programs amounted to coercion rather than being an invitation to voluntary cooperation with a financial incentive. *Nat'l Fed. Of Independent Business v. Sebelius*, ___ U.S. ___, 132 S. Ct. 2566 (2012). The extreme facts presented in that case are plainly not present here; offering to enter into contracts with the States to house federal prisoners, with the consequence that the federal government will partner with the State to address any problems of sexual assault in those facilities, is not coercive.

Congress's expansion of jurisdiction over sexual assaults in facilities holding federal prisoners was thus comfortably within its constitutional powers, whether analyzed as derivative of its power to pass criminal statutes implementing its enumerated powers, as in *Comstock*, or as a valid condition attached to the federal Spending Power, as in § 666.

## II.   The Sexual Assault Statutes are Not Unconstitutional as Applied to Mujahid

### A.   Standard of Review

Ordinarily, a claim that a statute is unconstitutional as applied to a defendant's circumstances is reviewed de novo. *United States v. Jinian*, 725 F.3d 954 (9th Cir. 2013). However, Mujahid did not timely raise his claim made here on appeal that he was not in fact a federal prisoner and that as a result the sexual assault statutes are unconstitutional as applied to him. As a result, he has forfeited that claim, and it is reviewable if at all for plain error only. Fed. R. Crim. P. 52(b); *United States v. Summers*, 268 F.3d 683 (9th Cir. 2001).

### B.   Discussion

Mujahid argues that even if the sexual assault statutes are constitutional on their face, their application to him was

31

unconstitutional because it "appears" he may not have been detained as a federal prisoner at the time of the alleged assaults, based on claims made by Mujahid in a post-trial, pro se filing. Opening Brief at 24. The fatal flaws in this argument are apparent on its face, beginning with the fact that this claim was never presented to the district court, moving to the fact that there are no factual findings by the district court on which this claim might be based, and culminating in the fact that Mujahid's entire claim is premised on the assumption that if he was not a federal prisoner, then somehow prosecuting him under these statutes would be unconstitutional, an assumption that is not valid.

> **1.    The argument that the sexual assault statutes are unconstitutional as applied to Mujahid because he was not a federal prisoner was forfeited and should not be considered by this Court.**

In his pretrial motion to dismiss on constitutional grounds, Mujahid did contend in a throwaway reference that the sexual assault statutes were unconstitutional "facially and as applied," but his argument was simply that the statutes were unconstitutional because they conflicted with the State's Tenth Amendment police powers. Motion to Dismiss, CR 24; Memorandum of Law in Support of Motion to

32

Dismiss the Indictment with Prejudice, CR 25.  As the district court pointed out, Mujahid offered no facts that would make the application of the laws to him unconstitutional if they were constitutional on their face.  ER 21.  He offered no argument that he was not a federal prisoner, or that the application of the laws to an individual who was not a federal prisoner would be beyond Congress's powers.

Nor did Mujahid's post-trial motion raise this argument.  While Mujahid did make the factual claim in those papers that he was not technically a federal prisoner at the time in question, his legal argument was that he should be granted a new trial because the government had violated its duty to disclose exculpatory information by not giving him that information.  ER 105-113.  In any event, that filing was untimely, in that it was submitted after the district court had lost jurisdiction over the case because Mujahid had already filed a notice of appeal from his conviction, and the district court declined to consider it.  ER 31-32.[10]

_____

[10] To make it clear, if such information existed, it was not exculpatory. None of the statutes of which Mujahid was convicted require that the perpetrator be a federal prisoner.  Rather, as has been discussed at

33

As a result, even if the underlying premise of this argument on appeal had some arguable merit – which it does not – there are no findings of fact by the district court by which this Court might judge the merits of the claim. The issue of whether Mujahid was or was not a federal prisoner was never litigated below, and neither the facts nor the law that would determine that issue have been explored. Therefore, this Court has nothing on which to base a review of Mujahid's claim, and it should decline to do so.

> **2.  Assuming Mujahid was not a federal prisoner at the time of sexual assaults, the sexual assault statutes nevertheless are constitutional as applied.**

In any event, Mujahid's argument – that because it "appears" he may not have been a federal prisoner at the time of the rapes he committed, the sexual assault statutes are unconstitutional as applied to him – is meritless. On their face, the statutes apply to anyone who commits a sexual assault in a facility in which federal prisoners are

---

length above, the jurisdictional requirement is that the sexual assault be committed in a facility in which federal prisoners are held pursuant to contract with the federal government. So long as the assault occurs in such a facility, it does not matter whether the defendant is a federal detainee, a State prisoner or a guard.

34

detained pursuant to a contract with the federal government. No question has been raised whether the ACC is such a facility, and there was extensive, unchallenged testimony at trial establishing that fact. ER 44-54. See discussion, *infra* at 52-54. Instead, Mujahid's argument rests on an assumption that if the perpetrator is not a federal detainee, then the sexual assault statutes are necessarily overbroad, trespassing on the exclusive domain of the States, because, in his words, "any federal interest is non-existent." Opening Brief at 25.

That argument, on its face, is clearly flawed. The federal government plainly has a substantial interest in ensuring that facilities that house its prisoners are reasonably safe, well-run facilities. As the *Comstock* Court pointed out, Congress is well within its authority to take steps to "ensure the safety of the prisoners, prison workers and visitors, and those in surrounding communities by, for example, creating further criminal laws." *Comstock*, 130 S. Ct. at 1958. A prisoner who preys on other prisoners in a facility holding federal detainees puts those detainees at risk, and at the very least contributes to a pervasive atmosphere of threat, chaos and violence. There is nothing in the Necessary and Proper Clause that requires Congress to

35

strictly limit its actions to narrowly focus on a direct federal stake.

Instead, the measures that should be adopted are left within the broad

discretion of Congress; it may adopt any measures that it deems

"convenient and useful," and "conducive to the beneficial exercise" of its

authority.  *Comstock*, 130 S. Ct. at 1956.

The cases upholding the constitutionality of § 666 illustrate this

well.  Section 666 criminalizes bribery, fraud or theft by any agent or

employee of any State or local government that received more than

$10,000 in federal benefits in a one-year period.  Although a purpose of

the legislation was to help protect the integrity of federal funds,

Congress appropriately chose to pursue that goal via a broader program

to help ensure the overall integrity of programs supported in whole or in

part by federal funds.  Furthermore, there is no requirement in § 666,

either in the statute or in the Constitution, that the government

establish a link between the defendant's criminal conduct and the

federal funds.  *Sabri v. United States*, 541 U.S. 600 (2004).  According to

the Supreme Court, to effectuate its purpose, Congress did not need to

limit itself to merely going after corrupt individuals who abuse their

positions to skim federal funds; rather, it was entitled to pursue the

36

broader goal of ensuring the integrity of institutions participating in federal assistance programs. *Fischer v. United States*, 529 U.S. 667, 668 (2000). Indeed, as this Court has held, no nexus need be shown between the conduct charged in a § 666 prosecution and the federal money. *United States v. Mirikitani*, 380 F.3d 1223 (9th Cir. 2004); *United States v. Kranovich*, 401 F.3d 1107 (9th Cir. 2005).

Similarly, to advance its goal of reducing sexual violence in facilities holding federal prisoners, Congress was not limited to legislation narrowly targeting the conduct of those federal prisoners. It was entitled both to address the broader issue of the conduct of all persons within the prisons, and to take steps that would help to avoid the development of an oppressive, violent atmosphere within the prison by criminalizing sexual assaults by anyone, not just the federal prisoners. A State prisoner or State prison guard who targets other prisoners not only contributes to the creation of such an atmosphere, but may well make a federal prisoner in such an institution his or her next target. Congress was well within its powers to take steps to forestall that eventuality.

37

Thus, even if Mujahid's claim that he was not a federal prisoner at the time of the assault were legally and factually supported, and properly before this Court – which it is not – that claim is of no moment. Neither the statutes that support his conviction nor the Constitution require that Mujahid have been a federal prisoner when he committed the sexual assaults.

## III. The District Court Properly Concluded that the Jurisdictional Predicate in this Case was an Issue of Law that Should be Decided by the Court

### A. Standard of Review

An appellate court reviews de novo whether the district court's jury instructions omitted or misstated an element of the charged offense. *United States v. Cherer*, 513 F.3d 1150, 1154 (9th Cir. 2008).

### B. Discussion

#### 1. Background

Mujahid challenges the district court's decision that the question of whether the ACC was a facility detaining federal prisoners under contract with the federal government was a question of law, to be decided by the district court, while the question of whether his assaults occurred within that facility was a factual question to be submitted by

the jury. With respect to each sexual assault count, the district court charged the jury that in order to find the defendant guilty, it must find that "the offense was committed at the Anchorage Correctional Complex." Docket 307, Jury Instruction No. 19 (thereafter repeated for each count). Following the trial, the district court entered an order for the record, concluding that as a matter of law, the ACC was a facility in which persons are held in custody pursuant to a contract with the United States Marshals Service, a federal agency.

The government, in its recommended jury instructions, relied on the Ninth Circuit  Model Jury Instructions for these offenses to recommend that the district court should ask the jury to decide whether the assaults occurred at the ACC, but that the threshold question of whether the ACC was a facility "in the special maritime and territorial jurisdiction of the United States or in a Federal prison, or in any prison, institution or facility in which persons are held in custody by direction of or pursuant to a contract or agreement with the head of any Federal department of agency" is a legal question to be decided by the district court. Model Instruction 8.164, Aggravated Sexual Abuse, provides that the jury should only be asked to determine whether the offense

39

occurred at the ACC, and goes on to explain in its Comment: "Whether the crime alleged occurred at a particular location is a question of fact. Whether the location is within the special maritime and territorial jurisdiction of the United States or a federal prison is a question of law. S*ee United States v. Gipe*, 672 F.2d 777, 779 (9th Cir. 1982)."[11]

Although the defendant objected, and requested that the jury be asked to determine the jurisdictional predicate, ER 27, the district court agreed with the Ninth Circuit Model Instruction, concluding, "I'm satisfied at this point that the existence of the contract is a legal question for the Court to decide, and the fact question that's for the jury to decide is simply was the victim housed in, you know, the institution[.]" ER 28. After the jury's guilty verdict was returned, the district court entered an order finding as a matter of law that the ACC was a facility in which persons were held in custody pursuant to a contract with the head of a federal agency. ER 29-30.

---

[11] As explained above, the same jurisdictional element, and therefore the same jury instruction, applied to each of the statutes of conviction in this case, 18 U.S.C. § 2241 (Aggravated sexual abuse), § 2242 (Sexual abuse), and § 2244 (Abusive sexual contact).

## 2.    The law

Mujahid argues that the Model Jury Instruction relied upon by the district court failed to take into account the 2006 change in the law to expand jurisdiction over the sexual assault statutes to assaults occurring in facilities holding individuals pursuant to federal contract. He contends that this question is a mixed question of fact and law that must be submitted to the jury rather than decided by the court.  He also argues that the jurisdictional predicate is an "element of the offense," and therefore the Supreme Court's decision in *United States v. Gaudin*, 515 U.S. 506, 510 (1995) (holding that whether a false statement is "material" is an element of the offense under 18 U.S.C. § 1001 that must be determined by the jury), requires that such issues be submitted to the jury.

Here, the district court correctly concluded that the jurisdictional predicate – whether the assault occurred in a facility holding federal prisoners under contract with the federal government – is in fact a mixed question of fact and law, and the court correctly sifted out the factual issue (where the offense occurred) from the legal issue (whether there was federal jurisdiction over that location), submitting the former

41

to the jury.  That is precisely how this Court, after *Gaudin*, has instructed district courts to handle such issues.  In *United States v. Smith*, 282 F.3d 758 (9th Cir. 2002), the jurisdictional question was whether at the time of the offense, the defendant was "on board a vessel that was subject to the jurisdiction of the United States."  This Court held that the factual question of whether the defendant was "on board the vessel" was a factual element of the offense that the jury should have been asked to decide.  On the other hand, the Court held, the question of whether the vessel was subject to the jurisdiction of the United States was a legal issue, properly decided by the district court. Lest it be argued that the question of whether a vessel is "subject to the jurisdiction of the United States" is plainly a pure question of law, the definition provided in 46 U.S.C.App. §1903(c)[12] is replete with preliminary factual determinations that must be made by the court, including questions such as how the vessel is registered, the consent of

---

[12] 46 U.S.C. App. § 1903(c) is now codified at 46 U.S.C. § 70502. Because the cases discussed herein reference § 1903(c), this brief will use that citation to avoid confusion.

foreign nations to United States' jurisdiction, the kind of vessel the ship is, and the destination or origin of the vessel.

It also could be argued that *Smith* can be distinguished because 46 U.S.C.App. §1903(f) specifically provides that jurisdictional questions under the Maritime Drug Law Enforcement Act are to be decided by the court, but if the Sixth Amendment requires that a jury decide the question, as the Court concluded it did as to whether or not the defendant was "on board the vessel," §1903(f) could not override that constitutional requirement.  Similarly, in *United States v. Warren*, 984 F.2d 325 (9th Cir. 1993), the defendant was charged with stabbing a man at Schofield Barracks, an army base located in Hawaii.  This Court concluded that the district court properly decided whether the base was within the jurisdiction of the United States, but that the question of whether the stabbing occurred on the base was a factual question that should have been submitted to the jury.[13]

This Court has adopted the same test when a jurisdictional element of the crime requires proof that the offense was committed

---

[13] *Warren*, of course, was decided before *Gaudin*, but it is cited with approval in *Smith*.  282 F.3d at 766.

43

within "Indian country." *United States v. Sohappy*, 770 F.2d 816, 822 n.6 (9th Cir.1985). The issue has both a factual and a legal component; the jury decides as a factual matter where the crime occurred; the court decides as a matter of law whether that location is within Indian country. Thus, the court decides the "jurisdictional status" of the place where the alleged crime occurred, "and then leaves to the jury the factual determination of whether the alleged crime occurred at the site." *United States v. Roberts*, 185 F.3d 1125, 1139 (10th Cir. 1999).[14] *See also United States v. Roy*, 408 F.3d 484 (8th Cir. 2005) (whether a Tribal Police officer is a federal officer for purposes of 18 U.S.C. § 111 a "threshold legal question" for the court; whether victim was such an

_____

[14] In his brief, Mujahid cites *United States v. Zepeda*, 705 F.3d 1052, 1061-62 (9th Cir. 2013) for the proposition that this Court has concluded that a jurisdictional element that a defendant be a member of an Indian tribe is a mixed question of fact and law that must be submitted to the jury. Mujahid properly notified this Court after submitting his brief that the *Zepeda* opinion had been withdrawn by the panel. Dkt. 46, Letter pursuant to FRAP 28(j). A new panel decision has been issued, in which, using a bifurcated approach like the one used by the district court here, the Court divided the issue into its component parts: "The question of whether a given tribe is federally recognized is a matter of law. The question of whether the government has proven that a defendant's bloodline derives from such a tribe is a question of fact for the jury to resolve." *United States v. Zepeda*, ___ F.3d ___, 2013 WL 5273093 (9th Cir. Sept. 19, 2013).

officer a question of fact for the jury); *United States v. Soto*, 539 F.3d 191 (3d Cir. 2008) ("required by this chapter" language in statute criminalizing false statements with respect to information required to be kept in records of federal firearms licensees a legal issue to be decided by trial judge notwithstanding *Gaudin*).

The question of whether jurisdictional predicates such as the one involved in these statutes are questions that must be submitted to the jury, rather than decided by the district court, is a difficult one, and it is undeniable that the law is in a state of considerable confusion. Indeed, this Court's decision in *United States v. Gipe*, cited by the Commentary in support of the Model Instruction used by the district court here, and the vigorous dissent from that decision, 672 F.2d at 779-780 (Poole, Circuit Judge, dissenting), illustrate some of the analytical difficulties presented by the issue. It is also clear, of course, that *Gaudin* does not necessarily resolve the issue; materiality in that case was plainly an element of the offense, in that it describes the nature of the required offense conduct itself. Federal jurisdiction over a location does not; it does not describe a characteristic of the defendant, the victim, or the

45

offense conduct, but merely delimits where that conduct must have occurred in order to bring it within federal jurisdiction.

Research disclosed no appellate decision resolving the question of whether this particular jurisdictional predicate is an issue that must be submitted to the jury, although the Ninth Circuit Model Jury Instructions are not the only source that concludes that the question is one of law for the district court rather than the jury.  Modern Federal Jury Instructions 3-61 (Matthew-Bender) recommends that the instruction for 18 U.S.C. § 2241 read:  "The indictment alleges that the offense occurred at [*location stated in indictment*].  You are instructed that [*said location*] is within the special maritime and territorial jurisdiction of the United States."  Commentary to the recommended instruction states:

> The courts are agreed that the question whether a particular location falls within federal jurisdiction under section 7 [special maritime and territorial jurisdiction] or 1153 [Indian reservations] is a pure question of law that should not be submitted to the jury.  Thus the published pattern instructions uniformly instruct the jury that a particular place is within federal jurisdiction and that the jury's role is to determine whether the offense took place at that location as charged.

46

The Seventh Circuit's model jury instruction agrees with this Court's Model Jury Instruction and the Modern Jury Instruction recommendation. The 2013 Instructions for the Seventh Circuit recommends that the jury be charged only that it must find that "The offense was committed at [*location stated in indictment, e.g., federal prison*]." Instruction for 18 U.S.C. § 2241(a) (aggravated sexual abuse). See also, *United States v. Prentiss*, 206 F.3d 960, 967 (10th Cir. 2000) ("While the court may determine, as a matter of law, the existence of federal jurisdiction over a geographic area, whether the locus of the offense is within that area is an essential element that must be resolved by the trier of fact.").[15] Other courts have analyzed the issue as one of judicial notice. *See United States v. Hernandez-Fundora*, 58 F.3d 802

---

[15] On the other hand, the Model Instructions for some other circuits suggest, without analysis, that the jurisdictional issue be included in the charge to the jury. See, e.g., Fourth Circuit Pattern Jury Instructions, 18 U.S.C. § 2241: "For you to find the defendant guilty, the government must prove each of the following beyond a reasonable doubt: . . . *Third, that the act occurred in the special maritime or territorial jurisdiction of the United States, or in a Federal prison, or in any prison, institution, or facility in which persons are held in custody by direction of or pursuant to a contract or agreement with the head of any Federal department or agency." Accord, Eleventh Circuit Criminal Pattern Jury Instructions, June 2010, Title 18, instruction 79.1.

(2d Cir. 1995) (district court could determine that assault in federal correctional institution fell within jurisdiction of United States and remove that issue from consideration by jury). *Hernandez-Fundora* reasoned that the question of whether the Raybrook Federal Correctional Institution was within the special maritime and territorial jurisdiction of the United States was a "legislative fact," an established fact resolved by legal principle or ruling, rather than by evidence in a particular case.

Mujahid seeks to distinguish the line of cases holding that the question of jurisdiction based on an offense occurring within the special maritime and territorial jurisdiction of the United States is an issue for the court by suggesting that that issue is a "pure question of law," rather than a mixed question of fact and law. Opening Brief at 28. However, just like the question of whether a facility is housing federal prisoners pursuant to contract, the question of whether a location is within the special maritime and territorial jurisdiction of the United States is resolved by factual determinations supporting that legal conclusion – for example, whether a stream connects the Great Lakes, 18 U.S.C. §7(2), whether a facility is a fort on land acquired by the

48

United States with the consent of the State, § 7(3), whether an island contains deposits of guano, § 7(4), or whether an aircraft belongs to a citizen of the United States, § 7(5).  *See United States v. Warren*, 984 F.2d 325 (9th Cir. 1993) (holding that court should determine whether Schofield Barracks is an army base within the definition of § 7, while jury should determine whether the assault occurred at that location).

The government does not dispute that this is a difficult issue, with difficult-to-reconcile precedents.  It is not easy to explain the distinction between the result in *United States v. McKye*, ___ F.3d ___ 2013 WL 4419330 (10th Cir. Aug. 20, 2013) (whether investment qualifies as a "security" is question for the jury) and the result in *United States v. DiCristina*, 726 F.3d 92 (2d Cir. 2013) (whether poker constitutes "gambling" is question of law for the court).   Nor is it easy to reconcile these decisions with *United States v. James,* 987 F.2d 648, 650 (9th Cir. 1993) ( FDIC insurance issue of mixed fact and law for jury). Nevertheless, the district court correctly concluded that it is the law of the Ninth Circuit, as set out in the Model Jury instructions and *Gipe*, that in cases like this one the district court is to determine whether the location is within the federal jurisdiction asserted, and the jury is to

49

determine whether the offense occurred at that location.  There was no error in the instruction given here.

### 3.    Harmless error

The government recognizes that the confusion surrounding the issue of whether district courts may resolve preliminary jurisdictional issues as a matter of law, or whether they must be submitted to the jury, is substantial, and that this Court may wish to reconsider its Model Jury Instruction in light of *Gaudin*.  The tension in the caselaw is well-illustrated by three decisions of this Court, each of which grapples with the question of whether the court may or a jury must resolve the preliminary jurisdictional question of whether a vessel was "subject to the jurisdiction of the United States" as required for a prosecution under 46 U.S.C.App. §1903.  *United States v. Smith*, 283 F.3d 758 (9th Cir. 2002), concluded that the question of where the vessel was intercepted is a question for the jury, while the question of whether that location is under the jurisdiction of the United States is for the court.  *United States v. Moreno-Morillo*, 334 F.3d 819 (9th Cir. 2003) held that the jurisdictional question under the same statute as to whether a vessel was stateless was properly decided by the judge to

50

establish subject matter jurisdiction over the defendants, but recognized the "tension in our case law." *Id*. at 830.   Finally, *United States v. Perlaza*, 439 F.3d 1149 (9th Cir. 2006), held that the same jurisdictional question as to whether a vessel was stateless must be submitted to the jury.  Clearly these are not easy issues.

Nevertheless, however this Court resolves the question of whether its Model Jury Instruction accurately states the law, Mujahid's conviction should be affirmed because even if the district court erred, any error was harmless.  As the defendant concedes, Opening Brief at 28-29, the harmless error rule applies to a finding that an element of the offense was omitted from the jury instruction.  *Neder v. United States*, 527 U.S. 1, 18 (1999).  To establish harmless error, the government must show that it is "clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error." *United States v. Thongsy*, 577 F.3d 1036, 1043 (9th Cir. 2009).  Here, the government introduced overwhelming, uncontroverted evidence that the ACC was a facility housing federal prisoners under contract with the federal government, comfortably meeting its burden under the harmless error standard.

At trial, the government presented the testimony of Deputy United States Marshal Rochelle Liedike, a 14-year veteran of the Marshal's Service. ER 44-54. Deputy Marshal Liedike testified that part of her responsibilities included inspections of jail facilities within the District of Alaska. She explained that there are no federal prison facilities in Alaska, and therefore the federal government contracts with the State of Alaska, Department of Corrections, to provide housing for federal detainees while they are in Alaska. ER 46. She established that the United States Marshals Service is a federal agency. ER 47.

Deputy Marshal Liedike went on to explain that the contract between the Marshals Service and the Department of Corrections had been originally executed in 1996, and that it had been updated and modified annually to adjust the contract amount and add additional correctional facilities. ER 48. The signed contract itself, together with its annual modifications, was offered into evidence without objection, ER 48, and is included in the Excerpts of Record at ER 57-84. The contract described the housing, safekeeping and subsistence that would be provided to the prisoners by the Department of Correction. ER 48. The contract covered federal prisoners housed at the ACC, per a

52

modification executed in 1998. ER 71. Contract extensions were
executed to cover the period of January 1, 2009, through January 2011,
covering the entire period during which Mujahid's sexual assaults
occurred. ER 52-54, 83-84. The defense did not challenge the
authenticity of the contract that was admitted into evidence; nor did it
cross-examine Deputy Marshal Liedike's testimony concerning the
existence or scope of the contract between the Marshals Service and the
Department of Correction. Nor did the defense offer any evidence in
rebuttal that would tend to undermine the conclusiveness of the
government's showing on this point.

Deputy Marshal Liedike's testimony and the contract itself
establish beyond any reasonable doubt that the jurisdictional predicate
for these sexual assault statutes – that the assaults occurred in a
facility in which persons were held in custody pursuant to a contract
with the federal government – was present in this case. No rational
juror would speculate otherwise. Because it is "clear beyond a
reasonable doubt that a rational jury" would have found the
jurisdictional predicate had it been instructed to do so, the government

met its burden of proving that any error here was harmless beyond a

reasonable doubt. *Thongsy,* at 1043.

## **CONCLUSION**

Congress was well within its powers pursuant to the Spending Power and the Necessary and Proper Clause when it passed the 2006 amendments to the sexual assault statutes, expanding jurisdiction to assaults occurring in facilities holding federal prisoners pursuant to contract. Mujahid's claim that he was not a federal prisoner at the time of the alleged assaults is not properly before this Court, but even if it were, it is irrelevant; it is required neither by the statutes nor the Constitution that the defendant be a federal prisoner. Finally, the district court did not err in deciding the jurisdictional predicate for these offenses, while leaving the factual issue of where the assaults

occurred to the jury, and even if there was error, it was harmless.  For these reasons, Mujahid's conviction should be affirmed.

RESPECTFULLY SUBMITTED on November 4, 2013, at Anchorage, Alaska.

KAREN L. LOEFFLER
United States Attorney

s/ Jo Ann Farrington
JO ANN FARRINGTON
Assistant United States Attorney
Fed. Bldg. & U.S. Courthouse
222 West 7th Avenue #9, Room 253
Anchorage, AK 99513-7567
Telephone: (907) 271-5071
Fax: (907) 271-1500

## <u>STATEMENT OF RELATED CASES</u>

Pursuant to Ninth Circuit Rule 28-2.6, Appellee hereby

states that there are no related cases pending before this court.

DATED on November 6, 2013, at Anchorage, Alaska.


<u>s/ Jo Ann Farrington</u>
JO ANN FARRINGTON
Assistant United States Attorney

57

## **BRIEF FORMAT CERTIFICATE**

I hereby certify that I prepared this brief in accordance with the Federal Rules of Appellate Procedure and the Rules of the United States Court of Appeals for the Ninth Circuit insofar as said Rules are available and known to me.

DATED on November 4, 2013, at Anchorage, Alaska.

<u>s/ Jo Ann Farrington</u>
JO ANN FARRINGTON
Assistant United States Attorney

58

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Rule 32(a)(7)(C) of the Federal Rules of Appellate

Procedure, the undersigned counsel for the Appellant hereby certifies

that this brief complies with the type-volume limitation of Rule

32(a)(7)(B).  As measured by the word processing program used to

prepare this brief, there are 10,553 words in this brief.

DATED on November 4, 2013, at Anchorage, Alaska.


s/ Jo Ann Farrington
JO ANN FARRINGTON
Assistant United States Attorney

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on November 4, 2013, I electronically filed Appellant's Opening Brief with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system, all participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

RESPECTFULLY SUBMITTED on November 4, 2013, at Anchorage, Alaska.

<u>s/ Jo Ann Farrington</u>
JO ANN FARRINGTON
Assistant United States Attorney